**United States District Court**
For the Northern District of California

1
2
3
4
5
6                                    **NOT FOR CITATION**
7                          UNITED STATES DISTRICT COURT
8                         NORTHERN DISTRICT OF CALIFORNIA
9
10
11
12   STANLEY J. KATZ, et al.,
13              Petitioners,                    No. C 05-1453 PJH
14        v.                                    **ORDER GRANTING PETITION TO**
                                                **CONFIRM ARBITRATION AWARD**
15   ROUND HILL SECURITIES, INC.,
     et al.,
16
17              Respondents.
     _____/
18        On August 31, 2005, the court heard argument in connection with the petition of Stanley
19   J. Katz, Edwin L. Katz, and First Alliance Management, Inc., to confirm an arbitration award
20   entered in favor of petitioners and against respondents Round Hill Securities, Inc., and First
21   Allied Securities, Inc.  Petitioners appeared by their counsel Richard T. White and Thomas P.
22   Whelley II, and respondents appeared by their counsel Michael R. Simmonds.  Having read
23   the parties' papers and carefully considered their arguments and the relevant legal authority,
24   and good cause appearing, the court hereby GRANTS the petition to confirm the arbitration
25   award.
26                                    **INTRODUCTION**
27        Petitioners Stanley J. Katz and Edwin L. Katz ("the Katz brothers") are residents of
28   Dayton, Ohio.  Petitioner First Alliance Management, Inc. ("First Alliance"), is an Ohio

corporation owned by the Katz brothers, and is registered with the Securities and Exchange

Commission as an investment advisor.  Respondent Round Hill Securities, Inc. ("Round Hill")

is a California corporation and a registered broker-dealer of securities.

On March 26, 1998, each of the Katz brothers executed a National Association of

Securities Dealers ("NASD") Form U-4 (Uniform Application for Securities Industry

Registration or Transfer).  Round Hill filed the Form U-4s, which also stated that each of the

Katz brothers would be transferring as a broker from Paine Webber on March 27, 1998, with

the appropriate regulators.  In signing the Form U-4, the Katz brothers agreed to

> arbitrate any dispute, claim, or controversy that may arise between me and my
> firm, or a customer, or any other person, that is required to be arbitrated under
> the rules, constitutions, or by-laws of the organizations indicated in item 10 as
> may be amended from time to time and that any arbitration award rendered
> against me may be entered as a judgment in any court of competent
> jurisdiction.[1]

On March 27, 1998, the Katz brothers and First Alliance entered into a Registered

Representative Agreement ("the Agreement") with Round Hill, whereby Round Hill appointed

petitioners independent "Contractors" for Round Hill in the sales of securities to the public.

The Agreement, which was drafted by Round Hill, provided in ¶ 8.3 that "any"

controversy between the parties "arising out of or relating to this Agreement or the breach

thereof" would be submitted to binding arbitration in accordance with the rules of either NASD

or the American Arbitration Association ("AAA"), "as the Contractor [i.e., the petitioners

herein] may elect."  The Agreement provided further that any court – state or federal – having

jurisdiction was granted power to enter a judgment on any award resulting from arbitration

because the arbitration award resulting from arbitration was to be a final and nonappealable

decision on the controversy submitted.

In January 2003, a dispute arose between the parties concerning the payment of

commissions to the Katz brothers, and management fees to First Alliance.  This was a matter

"arising out of" the Agreement.  Petitioners elected to take the matter to arbitration with the

AAA.  An arbitrator was selected and confirmed in September 2003, and the arbitrator held

---

[1] The only box checked under "item 10" on the Form U-4s was "NASD."

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   hearings and heard evidence.  On April 4, 2005, the arbitrator issued an award in favor of

2   petitioners in the amount of $306,902, plus $141,000 in attorneys' fees.  On April 8, 2005,

3   petitioners filed the present petition for confirmation of the award.

4       On May 9, 2005, Round Hill filed an application for an order vacating the arbitration

5   award (in lieu of filing an opposition to the petition).  Round Hill asserted that the arbitrator had

6   exceeded his powers because he did not have jurisdiction to hear the Katz brothers' claim,

7   and because the award ordered Round Hill to pay commissions to a non-broker-dealer and

8   non-NASD member (First Alliance), in violation of NASD rules.

9       In June 2005, Round Hill merged with respondent First Allied Securities, Inc. ("First

10  Allied"), a New York corporation with its principal place of business in San Diego, with First

11  Allied as the surviving entity.  After Round Hill and First Allied merged, petitioners filed a

12  supplemental petition to confirm the award, and served First Allied.  First Allied then filed a

13  notice of joinder in the application to vacate the award.

14                                  **DISCUSSION**

15  A.    Legal Standard

16      The Federal Arbitration Act ("FAA") "gives federal courts only limited authority to

17  review arbitration decisions, because broad judicial review would diminish the benefits of

18  arbitration."  Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir.

19  2004) (citing Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th

20  Cir. 2003) (en banc)).  Under the FAA, if a party seeks a judicial order confirming an

21  arbitration award, "the court must grant such an order unless the award is vacated, modified,

22  or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  Confirmation is

23  required "even in the face of erroneous findings of fact or misinterpretations of law."  French v.

24  Merrill Lynch, Pierce, Fenner & Smith, Inc., 784 F.2d 902, 906 (9th Cir. 1986) (citation and

25  quotation omitted).

26      Section 10 permits vacatur only

27      (1) where the award was procured by corruption, fraud, or undue means;

28      (2) where there was evident partiality or corruption in the arbitrators, or either of

United States District Court

For the Northern District of California

them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The grounds set forth in § 10(a) "afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." Kyocera, 341 F.3d at 997. The "exceeded their powers" provision of § 10(a)(4) allows vacatur only when arbitrators purport to exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard for the law. Id. at 1002. Arbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is "completely irrational," French, 784 F.2d at 906, or exhibits a "manifest disregard of law," Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1059-60 (9th Cir. 1991). See Kyocera, 341 F.3d at 997.

> The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4).

Id. at 1002-03.

B.    The Parties' Arguments

Petitioners assert that the award should be confirmed under § 9 of the FAA. They note that the parties agreed that "any dispute" between Round Hill and a Contractor (the Katz brothers and First Alliance) "arising out of" the Agreement should be settled by arbitration pursuant to the rules of either NASD, or AAA – at the election of the Contractors. They contend that because the arbitration went forward before the AAA, as specified in the Agreement, and the arbitrator issued the award, the award should now be confirmed. They

4

United States District Court

For the Northern District of California

1   argue that respondents should not now be permitted to declare a provision in their own

2   agreement invalid.

3       Respondents assert that the award should be vacated because the arbitrator

4   exceeded his powers.  Based on the fact that the Katz brothers signed the NASD Form U-4

5   agreeing to arbitrate any disputes under the rules of the NASD, respondents contend that the

6   NASD had exclusive jurisdiction to hear the claims raised by the Katz brothers, and that the

7   arbitrator exceeded his powers by improperly exercising jurisdiction over those claims and by

8   awarding commissions to the Katz brothers.  Respondents argue that the Form U-4 requires

9   arbitration of all claims before NASD (not another entity, such as AAA), and that the arbitration

10  provision in the Agreement between petitioners and Round Hill was "superceded as a matter

11  of law" by the arbitration clause in the Form U-4.

12      Respondents contend that the Agreement between Round Hill and petitioners cannot

13  be read to confer jurisdiction contrary to NASD rules.  They note that the § 4.2 of the

14  Agreement provides that "[i]n connection with all of Contractor's activities" under the

15  Agreement, "Contractor shall comply with all rules and regulations of the Securities Act of

16  1933, the Securities Exchange Act of 1934, the Adviser Act, the NASD, SEC and securities

17  laws of the states and all Interpretations therof, where securities will be offered for sale."

18  Respondents submit that to the extent that the arbitration provision of the Agreement conflicts

19  with other provisions of the agreement (such as the provision requiring compliance with NASD

20  rules), it must be deemed invalid and unenforceable.  They argue that NASD member firms

21  and associated persons cannot simply "agree" to violate the rules and regulations of the

22  NASD, which have been approved by the SEC and which govern them.

23      Petitioners respond that Round Hill was aware of the NASD rules and the contents of

24  the Form U-4 at the time it signed the Agreement with petitioners, and that it agreed to

25  arbitrate before either the NASD or the AAA, with petitioners to make the choice.  Petitioners

26  contend that Round Hill has never challenged the basic premise that it is bound to arbitrate the

27  claims brought by petitioners, nor has it challenged the viability of its Registered

28  Representative Agreement, but has instead asserted that the contractual arbitration

United States District Court

For the Northern District of California

1   agreement was superceded by a subsequent agreement, the NASD Form U-4, with its

2   requirement of arbitration under the NASD rules.  Petitioners claim, however, that the Katz

3   brothers signed the Form U-4 on March 26, 1998, the day before they signed the Agreement

4   with Round Hill on March 27, 1998.  Thus, they assert, the Form U-4 could not have

5   "superceded" the arbitration provision in the Agreement.

6          Petitioners argue further that the respondents' jurisdictional arguments were waived

7   because they were not timely raised in the AAA arbitration, noting that there was a six-month

8   delay between the filing of the statement of claim in April 2003 and Round Hill's filing of the

9   motion to dismiss in October 2003.  Petitioners assert that during that period, Round Hill

10  actively participated in the AAA proceedings, submitting briefing on the subject of the location

11  of the arbitration, and participating in the choosing of the arbitrator.  Petitioners assert that

12  only after completion of these activities did Round Hill file a jurisdictional challenge to the

13  arbitrability of claims by the Katz brothers (but not the claims of First Alliance).  Petitioners

14  assert that the failure to timely raise these arguments in the AAA arbitration, and failure to

15  seek a stay of the arbitration in district court, constitute a waiver of the arguments.

16         Respondents contend that Round Hill did not waive the requirement that the dispute be

17  arbitrated before the NASD.  They claim there was no substantial delay and that petitioners

18  did not suffer undue prejudice, because after the issue was raised in Round Hill's motion to

19  dismiss, the Katz brothers continued to press their claims before the AAA for twenty months

20  more, finally obtaining the award that is the subject of this action.  Respondents maintain that

21  the Katz brothers knew that Round Hill would eventually seek to vacate any award on that

22  ground, but nonetheless improperly proceeded with the AAA arbitration.

23         Petitioners also dispute respondents' assertion that the arbitration provision in Form

24  U-4 and the NASD rules require arbitration before the NASD.  Petitioners argue that the

25  reference in Form U-4 to "any dispute . . . " that is "required to be arbitrated" under the rules of

26  NASD simply means that there must be an arbitration of any such dispute, but does not mean

27  that the arbitration must be conducted in accordance with the NASD rules or under the

28  auspices of an NASD arbitrator.  Respondents, on the other hand, contend that Form U-4

United States District Court
For the Northern District of California

1   should be interpreted as requiring that any dispute, claim, or controversy be arbitrated under

2   the NASD rules.

3       With regard to the NASD rules, petitioners argue that NASD Code of Arbitration Rule

4   10201, which requires arbitration under the NASD rules "at the instance of" an NASD member

5   or person associated with a member against another member or person associated with a

6   member means that the arbitration must be brought with the NASD where one of the parties to

7   the arbitration demands that it be brought with the NASD.  Petitioners contend that the NASD

8   is not concerned with members who may agree to arbitrate in another forum.

9       Respondents, on the other hand, contend that the language of Rule 10201 means that

10  except for special claims, "all disputes shall be arbitrated under the [NASD] Code."   However,

11  they omit the four words following that clause – "at the instance of" – and argue that there is no

12  authority for petitioners' "novel interpretation" of the phrase.  Instead, they cite NASD Code of

13  Arbitration Rule 10101, which simply states that the rules in the Code are prescribed and

14  adopted "for the arbitration of any dispute, claim or controversy . . . (b) between or among

15  members and associated persons . . . . "

16      Respondents claim that their interpretation is supported by the fact that the NASD

17  recently announced proposed rule changes (still under consideration by the SEC), which

18  include a New Proposed Rule 13200, "Required Arbitration," stating, "Except as otherwise

19  provided in the Code, a dispute must be arbitrated under the Code if the dispute arises under

20  the business activities of a member or an associated member and is between or among . . .

21  Members and Associated Persons . . . ."  Respondents contend that the present dispute does

22  not fall under any of the enumerated exceptions, and argue that because the NASD has stated

23  that these proposed rules represent "no substantive change" from the current rules, the court

24  should find that NASD arbitration is required in the present dispute.  They also assert that if

25  the Katz brothers' interpretation of the phrase "at the instance of" were the correct one, then

26  the New Proposed Rule 13200 would constitute a radical change.

27      In a final argument, petitioners contend that in arguing that the arbitration should

28  properly have been brought before the NASD, and that First Alliance cannot arbitrate before

7

**United States District Court**

For the Northern District of California

1   the NASD because it is not a member, respondents are attempting to deprive First Alliance of

2   a forum in which to arbitrate its claims against respondents.  Petitioners assert that the AAA

3   was the only jurisdiction where all interested parties could obtain relief, as NASD rules do not

4   permit First Alliance (a non-member) to bring its claims to arbitration before the NASD.

5   Petitioners argue that enforcing the award in favor of First Alliance would not violate public

6   policy because there is no clearly defined statutory or other explicit public policy that would be

7   violated by confirming the arbitration award in the present case.

8          In response, respondents contend that while First Alliance was free to submit its claim

9   for arbitration before the AAA, the Katz brothers were not.  Respondents also contend that

10  because the arbitrator did not indicate the specific amount awarded to First Alliance, the

11  entire $306,902 can be viewed as an award of "commissions" to First Alliance.  They argue

12  that because it is a violation of NASD rules and regulations for a member firm (such as Round

13  Hill) to pay commissions to a non-member (such as First Alliance), an award that orders

14  Round Hill to pay commissions to a non-NASD-licensed or -registered broker-dealer is

15  therefore a violation of law and a violation of public policy.

16  C.    Analysis

17         Proceedings under § 9 of the FAA are intended to be summary, and confirmation can

18  be denied only if an award has been corrected, vacated, or modified in accordance with the

19  FAA.  See, e.g., Northrop Corp. v. Triad Int'l Marketing, S.A., 842 F.2d 1154, 1157 & n.7 (9th

20  Cir. 1988); Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2004)

21  § 16:132.  Based on the clear policy favoring confirmation of arbitration awards, the court finds

22  that the petition to confirm the award should be GRANTED.  The court finds further that the

23  application to vacate the award should be DENIED, as respondents have not met the high

24  standard for vacating arbitration awards.

25         Respondents have not established that the arbitrator exceeded his powers.  Section

26  10(a)(4) of the FAA has been interpreted by the Ninth Circuit as meaning that the award is

27  "completely irrational" or "exhibits a manifest disregard of the law."  Respondents do not argue

28  that the award falls into either of those categories.  Arbitrators may also "exceed their powers"

**United States District Court**
For the Northern District of California

1   where they purport to exercise powers that the parties did not intend them to possess.  Here,

2   the Agreement provided that petitioners would be permitted to choose whether they wanted to

3   arbitrate before the AAA or the NASD.  There is no question of the arbitrator purporting to

4   exercise powers that the parties did not intend him to have.

5        The court finds that the NASD rules on which respondents rely are ambiguous and far

6   from clear.  The court does not agree with respondents that the language in Rule 10201 –

7   "shall be arbitrated under the Code, at the instance of" a member or associated person –

8   simply means "shall be arbitrated under the Code."  The word "instance" as used in the phrase

9   "at the instance of" means "urgent solicitation or insistence."  Black's Law Dictionary (7th ed.

10   1999) at 800; see also Bryan A. Garner, A Dictionary of Modern Legal Usage (2nd ed.,

11   Oxford Press, 2001), at 454-55.  In the court's view, the requirement that a dispute "shall be

12   arbitrated under the Code at the instance of" a member or associated person appears to be a

13   requirement that the dispute be arbitrated under the NASD Code if a request to arbitrate

14   under the Code is made by a member or associated person.  At a bare minimum, the

15   provision is ambiguous.

16        Moreover, the other rules cited by respondents do not compel arbitration under the

17   NASD Code or rules – but rather simply require arbitration of certain issues, without

18   specifying the arbitral body.  The court finds nothing in the rules cited by respondents that

19   clearly prohibits parties from agreeing to arbitrate in a forum other than the NASD.  The case

20   cited by respondents, Burns v. New York Life Ins. Co., 202 F.3d 616 (2nd Cir. 2000), simply

21   stated (not as part of the holding) that the "relevant 'rules' and 'by-laws'" referenced in Form

22   U-4's agreement to arbitrate ("I agree to arbitrate any dispute . . . that may arise . . . that is

23   required to be arbitrated under the rules, constitutions, or by-laws of the organizations with

24   which I register") referred in that case to the NASD Code of Arbitration Procedure.  Burns, 202

25   F.3d at 619.  However, the Form U-4 agreement does not state that any dispute between

26   NASD members must be arbitrated under the auspices of the NASD, but rather simply that the

27   person signing agrees that he or she will arbitrate any dispute that the NASD rules require to

28   be arbitrated.

**United States District Court**
For the Northern District of California

1    The court is also not persuaded by respondents' argument with regard to the "New

2    Proposed Rule 13200" and the statement by NASD that none of the proposed new rules

3    represents any substantive change from the old rules.  The new rules have not yet been

4    approved, and there is no way of knowing whether they will.  A "proposed rule" is not a rule,

5    and provides no basis for finding that the arbitration award should be vacated.

6    Finally, with regard to the claim that the award improperly awards "commissions" to

7    First Alliance because it does not distinguish between the award to the Katz brothers and the

8    award to First Alliance, the court is not persuaded that respondents have articulated a valid

9    basis under the FAA for vacating the award.  At the arbitration, the petitioners collectively

10   asserted a total damage claim of $252,297.54, plus interest, costs, and attorneys' fees, plus

11   "miscellaneous claims" of $7,329.29.  Among the "miscellaneous claims," First Alliance

12   asserted that Round Hill had improperly retained a portion of "management fees" billed to

13   Bear Stearns accounts for the quarter in which First Alliance was terminated.  Respondents

14   argue that it is impossible to tell from the award whether any of the $6,164.29 requested for

15   "management fees" was awarded by the arbitrator, or whether First Alliance was also

16   improperly awarded "commissions."

17   The court is not in a position to know for certain how much of the award was intended to

18   be allocated to First Alliance, as that knowledge lies with the arbitrator.  However, Thomas

19   Whelley, counsel for petitioners, who also represented the petitioners at the arbitration,

20   represented to the court at the hearing that Round Hill never requested payment of

21   commissions to First Alliance, that the amount of the final award approximated the total sought

22   by claimants in the arbitration, and that the amount of the management fees sought by First

23   Alliance was such a minor concern that it was not even raised during the arbitration

24   proceeding itself.  Thus, the court has no basis to assume that the respondents contemplated

25   or that the arbitrator intended that First Alliance recover any amount in excess of its $6,164.29

26   in management fees.

27   / / /

28   / / /

**CONCLUSION**

In accordance with the foregoing, the court CONFIRMS the award of the arbitrator.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  September 16, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge